UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**26-C-882**

**Mercedes Calle,**
  Plaintiff,

v.

**CareRev, Inc. d/b/a Carestat!,**
  Defendant.

Case No. _____

JURY TRIAL DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mercedes Calle ("Plaintiff"), proceeding pro se, alleges the following against Defendant CareRev, Inc. d/b/a Carestat! ("CareRev" or "Defendant"):

### I. INTRODUCTION

1. This action arises from sexual harassment, hostile work environment, retaliation, race discrimination, negligent investigation, emotional distress, and related unlawful conduct experienced by Plaintiff while working through Defendant CareRev.

2. Plaintiff primarily worked assignments through CareRev at Froedtert Hospital Main Campus in Wauwatosa, Wisconsin, and occasionally worked assignments at other Froedtert facilities.

3. Plaintiff alleges that she was subjected to repeated harassment and intimidation by a male CareRev worker identified as Brandon Robinson, a Registered Nurse who held a higher-ranking clinical position than Plaintiff.

4. Plaintiff repeatedly reported the conduct to Defendant and provided witness information, emails, screenshots, statements, and other supporting information.

5. Despite receiving repeated complaints and notice of Plaintiff's emotional distress and PTSD-related concerns, Defendant allegedly failed to conduct a full and adequate investigation and failed to adequately protect Plaintiff.

6. Plaintiff further alleges that Defendant treated her complaints differently than complaints made by similarly situated white employees.

1

7. Plaintiff additionally alleges that after engaging in protected activity and reporting harassment, she suffered retaliation, emotional distress, financial hardship, lost opportunities, and damage to her professional reputation.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to federal question jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and other applicable federal and state laws.

9. Venue is proper in the Eastern District of Wisconsin because a substantial part of the events giving rise to these claims occurred within this District.

## III. PARTIES

10. Plaintiff Mercedes Calle is an adult resident of Wisconsin and uses a protected mailing address for safety purposes.

11. Defendant CareRev, Inc. d/b/a Carestat! is a corporation organized and doing business in the State of California, with its principal place of business located in Playa Vista, California, and conducts business in Wisconsin by providing healthcare staffing and employment-related services.

## IV. FACTUAL ALLEGATIONS

12. On or about December 30, 2023, while working on unit 5NE at Froedtert Main Campus, Robinson rubbed his groin against Plaintiff's buttocks while walking behind Plaintiff in a patient's room with the door closed and stated words to the effect of, "You like working here."

13. Later during the same shift, while Plaintiff was in an equipment room, Robinson entered the room, grabbed Plaintiff's face, kissed Plaintiff aggressively, and again stated words to the effect of, "You like working here."

2

14. During February 2024, Plaintiff noticed Robinson repeatedly looking at Plaintiff's breasts and making inappropriate comments regarding Plaintiff's body.

15. During February 2024, Plaintiff also witnessed conduct involving a patient and Robinson that Plaintiff believed was inappropriate and unprofessional.

16. During February 2024, Plaintiff began speaking with coworkers and other staff members regarding Robinson's conduct. Plaintiff learned that other staff members had allegedly experienced or observed inappropriate conduct involving Robinson.

17. On or about March 2, 2024, Plaintiff floated to unit 5NE where Robinson allegedly created a hostile and uncomfortable work environment for Plaintiff. During that shift, Robinson allegedly neglected patient call lights, remained on his phone during portions of the shift, and failed to adequately assist with patient care responsibilities despite staffing shortages.

18. During the same shift, Robinson allegedly sent Plaintiff a nude photograph while both parties were working.

19. Plaintiff informed Robinson that Plaintiff intended to report his conduct and behavior. In response, Robinson allegedly grabbed Plaintiff's arm in the back hallway of unit 5NE in front of a coworker and stated words to the effect of, "Are we good?" and instructed Plaintiff not to "antagonize his character."

20. On or about March 2, 2024, Plaintiff reported concerns to CareRev regarding workplace conduct and staffing issues.

21. On or about March 6, 2024, Plaintiff formally reported sexual harassment and related conduct involving Robinson to CareRev by phone.

22. Plaintiff informed CareRev that coworkers and other staff members possessed information regarding Robinson's conduct.

23. Plaintiff was informed that her concerns had been escalated internally.

24. On or about March 7, 2024, Plaintiff requested relocation by email because Plaintiff felt uncomfortable and unsafe working around Robinson.

25. Defendant informed Plaintiff that relocation was on pause.

26. On or about March 12, 2024, while working on unit 4SW during third shift, Plaintiff went to the Patio Café, located on the lower level of Froedtert Main Hospital, to obtain food for a patient.

27. Plaintiff alleges Robinson waited for Plaintiff after obtaining food and followed Plaintiff toward the C elevators.

28. Plaintiff told Robinson to leave her alone.

29. Robinson then allegedly grabbed Plaintiff's arm aggressively in the elevator and stated words to the effect of, "We good right?"

30. Plaintiff pulled her arm away, began yelling, and experienced panic and emotional distress after the elevator doors opened. Plaintiff alleges the incident occurred in areas covered by hospital surveillance cameras.

31. Plaintiff returned to the 4SW report room visibly distressed, and a coworker noticed something was wrong and advised Plaintiff to contact supervisory personnel. The coworker called on her Vocera because Plaintiff's Vocera was not working.

32. Plaintiff reported the incidents to supervisory personnel using a phone in the hallway of 4SW. A supervisor later came to 4SW to speak with Plaintiff in person during the shift.

33. Plaintiff later learned that Froedtert supervisory personnel were allegedly unaware of Plaintiff's earlier complaint to CareRev.

34. On or about March 13, 2024, CareRev initiated an investigation after being contacted regarding the March 12 incident.

4

35. Plaintiff cooperated with the investigation and provided information regarding witnesses, prior incidents, screenshots, communications, and other supporting information.

36. Plaintiff repeatedly informed Defendant during phone calls, emails, and other communications that the harassment and Defendant's response were causing severe emotional and psychological distress, including worsening PTSD-related symptoms, anxiety, depression, fear, emotional trauma, panic, crying episodes, and emotional withdrawal.

37. On or about April 2, 2024, Defendant concluded its investigation with "no findings." Plaintiff alleges Defendant informed Plaintiff that she would need to continue working around Robinson or risk being designated "DNR" and losing work opportunities.

38. Plaintiff alleges Defendant failed to adequately investigate Plaintiff's complaints, including failing to meaningfully review evidence, interview important witnesses identified by Plaintiff, and fully investigate reported incidents.

39. Plaintiff later learned that two identified witnesses allegedly had not been contacted during the investigation process.

40. On or about May 23, 2024, Plaintiff contacted the Froedtert Compliance Hotline by phone to file a complaint regarding the harassment and investigation concerns.

41. Upon information and belief, Plaintiff became aware of a white female Froedtert employee who allegedly reported that a CareRev nurse touched her inappropriately and that the CareRev nurse was subsequently removed.

42. Plaintiff repeatedly challenged the adequacy and thoroughness of the investigation and requested additional review.

43. On or about May 31, 2024, Plaintiff submitted an EEOC complaint.

44. During June 2024, Plaintiff began therapy due to severe emotional distress, anxiety, depression, fear, and stress associated with the harassment, retaliation, and hostile work environment.

45. Plaintiff continued reporting concerns regarding Robinson's conduct and the investigation throughout June and July 2024.

46. On or about July 2, 2024, Plaintiff submitted an online complaint to the Wisconsin Department of Safety and Professional Services, Board of Nursing.

47. On or about July 19, 2024, the Wisconsin State Board of Nursing notified Defendant regarding Plaintiff's complaint.

48. On or about July 23, 2024, Plaintiff was placed on "Do Not Return" ("DNR") or "Do Not Send" ("DNS") status at Froedtert facilities for alleged "continued disruption of workplace after concluded investigation."

49. Plaintiff alleges Defendant subsequently restricted Plaintiff's access to shifts, work opportunities, and employment-related platforms.

50. On or about August 13, 2024, Plaintiff alleges Defendant informed Plaintiff that there were "not enough findings" against Plaintiff and that Plaintiff had been "cleared," but Plaintiff nevertheless remained unable to return to work at Froedtert facilities or obtain assignments at other facilities available through Defendant's platform.

## V. CAUSES OF ACTION

### COUNT I - SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

51. Plaintiff incorporates all prior paragraphs.

52. Plaintiff was subjected to unwelcome sexual, verbal, and physical conduct.

6

53. The conduct was severe and pervasive enough to create a hostile, intimidating, and offensive work environment.

54. Defendant knew or should have known about the harassment.

55. Defendant failed to take prompt and effective remedial action.

56. As a direct and proximate result, Plaintiff suffered emotional distress, humiliation, anxiety, financial harm, and other damages.

## COUNT II - RETALIATION

57. Plaintiff incorporates all prior paragraphs.

58. Plaintiff engaged in protected activity by reporting harassment and discrimination.

59. After engaging in protected activity, Plaintiff suffered adverse actions including loss of opportunities, emotional distress, workplace interference, and other retaliatory conduct.

60. Defendant's actions would discourage a reasonable person from reporting discrimination or harassment.

61. Defendant's conduct caused Plaintiff damages.

## COUNT III - RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

62. Plaintiff incorporates all prior paragraphs.

63. Plaintiff is an African American woman.

64. Plaintiff alleges Defendant treated Plaintiff differently than similarly situated white employees who made complaints of workplace misconduct.

65. Plaintiff alleges Defendant failed to provide Plaintiff the same level of responsiveness, protection, urgency, and corrective action provided to white employees.

7

66. Plaintiff further alleges Defendant interfered with Plaintiff's ability to continue working and obtaining assignments through Defendant's platform after Plaintiff engaged in protected activity.

67. Defendant's conduct impaired Plaintiff's contractual and employment-related opportunities on the basis of race and retaliation in violation of 42 U.S.C. § 1981.

68. Defendant's actions caused Plaintiff damages.

## COUNT IV - NEGLIGENT INVESTIGATION / FAILURE TO PROTECT

69. Plaintiff incorporates all prior paragraphs.

70. Defendant failed to conduct a full, fair, and adequate investigation into Plaintiff's complaints.

71. Defendant failed to adequately protect Plaintiff after receiving notice of harassment and emotional distress.

72. Defendant's failures caused Plaintiff emotional distress, financial harm, and additional damages.

## VI. DAMAGES

73. As a direct and proximate result of Defendant's conduct, Plaintiff suffered:

- emotional distress;

- PTSD-related symptoms;

- anxiety and depression;

- humiliation and embarrassment;

- emotional trauma;

- therapy expenses;

- panic and anxiety while working;

- hair loss;

- weight gain;

- sleep disruption;

- loss of income and employment opportunities;

- garnishment-related financial hardship;

- mental anguish;

- and damage to Plaintiff's professional reputation and quality of life.

74. Plaintiff continues to suffer emotional and financial damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Award compensatory damages;

C. Award damages for emotional distress and mental anguish;

D. Award back pay and front pay as permitted by law;

E. Award punitive damages as permitted by law;

F. Award attorney's fees, litigation costs, expenses, and any other relief deemed appropriate and permitted by law;

G. Award injunctive and equitable relief deemed appropriate by the Court, including implementation or improvement of policies, reporting procedures, training, monitoring, and corrective measures related to workplace harassment, retaliation, and complaint investigations.

H. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## EXHIBITS

Exhibit 1 - EEOC Notice of Right to Sue Letter

Plaintiff declares under penalty of perjury that the foregoing is true and correct to the best of

Plaintiff's knowledge, information, and belief.

Respectfully submitted,

Mercedes Calle
3902 Milwaukee Street #Y571
Madison, Wisconsin 53707
414-514-5915
Mercedes.calle@ymail.com

Case 2:26-cv-00882-JPS     Filed 05/18/26     Page 10 of 10     Document 1